UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MIGUEL FLAQUER,                   :
                                  :
         Petitioner,              :
                                  :
v.                                :         3:11cv713 (MRK)
                                  :
UNITED STATES OF AMERICA,         :
                                  :
         Respondent.              :

### MEMORANDUM OF DECISION

Pending before the Court is Petitioner Miguel Flaquer's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [doc. # 1], in which Mr. Flaquer asserts that (1) his counsel John Walkely provided ineffective assistance during the plea proceeding because he failed to conduct an adequate pretrial investigation before advising Mr. Flaquer to plead guilty; (2) his subsequent counsel, Diane Polan, provided ineffective assistance at the sentencing hearing because, against his wishes, she abandoned the argument that Mr. Flaquer should be held responsible for no more than five kilograms of cocaine for sentencing purposes; and (3) Ms. Polan also provided ineffective assistance at the sentencing hearing because she failed to introduce Luis Noboa's testimony as evidence against Mr. Flaquer's alleged role in the conspiracy.

Because the Court finds none of Mr. Flaquer's claims to be plausible, *see Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009), Mr. Flaquer is not entitled to § 2255 relief. Mr. Flaquer's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [doc. # 1] is therefore DENIED.

## I.

A brief review of the procedural history is provided here; various facts will be discussed in the context of the analysis where useful.

On June 20, 2006, Mr. Flaquer pled guilty to Count One of the Superseding Indictment, which charged him with conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine in violation of 21 U.S.C. 841(a)(1), 841(b)(1)(A), and 846. At the plea hearing, Magistrate Judge Holly B. Fitszimmons clarified that Mr. Flaquer understood the interpreter, had no difficulty in speaking with his lawyer in the past, was satisfied with his lawyer's representations, and knew that he could ask questions or take time to speak with his lawyer if necessary.

On July 20, 2008, at a pre-sentencing hearing before Judge Alan H. Nevas, the court gave Mr. Flaquer the option of withdrawing his guilty plea and going to trial. After conferring with Ms. Polan, Mr. Flaquer decided not to withdraw his plea.

On July 30, 2008, Judge Nevas sentenced Mr. Flaquer. Mr. Flaquer's sentence was calculated according to the United States Sentencing Commission Guidelines ("the Guidelines") in effect on November 1, 2007. Judge Nevas assumed that Mr. Flaquer sold at least 15 but less than 50 kilograms of cocaine, resulting in an adjusted offense level of 34 (given a two-level enhancement for role and a two-level reduction for acceptance of responsibility) and found that Mr. Flaquer fell into criminal history category I. The sentence Mr. Flaquer received—168 months of imprisonment, followed by five years of supervised release—was in the middle of the Guidelines' range of 151 to 188 months.

On August 1, 2008, Mr. Flaquer filed a timely notice of appeal, claiming that (1) the government breached the plea agreement by arguing for a role enhancement at sentencing; (2)

defense counsel was ineffective for failing to address the fact that the government breached the plea agreement; (3) the sentencing court erred in finding that the government proved that Mr. Flaquer was a supervisor and in applying a two-point enhancement for his role; and (4) the sentencing court erred by concluding that a Guidelines sentence was reasonable. On January 19, 2010, the Second Circuit affirmed the sentencing court's judgment in a summary order. *See United States v. Flaquer*, 361 Fed. App'x 222 (2d Cir. 2010).

## II.

As a preliminary matter, the Court notes that it is not necessary to conduct an evidentiary hearing in this case, as the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also Pharm v. United States*, 317 F.3d 178, 184 (2d Cir. 2003) ("It is within the district court's discretion to determine whether a hearing is warranted [in a § 2255 case].").

"To warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." *Puglisi*, 586 F.3d at 213 (quotation marks omitted). Rule 4(b) of the *Rules Governing § 2255 Proceedings* further provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 281 U.S.C. foll. § 2255.

"The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding." *Puglisi*, 586 F.3d at 213. The petitioner sets forth his legal and factual claims, accompanied by exhibits; the district court reviews those materials and relevant portions of the record in the underlying criminal proceeding

3

in the light most favorable to the petitioner; and the district court then determines whether the petition may be able to establish at a hearing a *prima facie* case for relief. *See id.* If material facts are in dispute, a hearing should be held to determine relevant findings of fact. *See United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987) (finding that a hearing is appropriate when a petition includes "assertions of fact that a petitioner is in a position to establish by competent evidence"); *cf. Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977) (finding that "bald" allegations, unsupported by evidentiary facts, do not require a hearing). Unlike a summary judgment motion, a petition "need only to identify available sources of relevant evidence rather than obtain it." *Puglisi*, 586 F.3d at 213. Finally, "a district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding." *Id.* at 214. A court may also consider whether live testimony would add little or nothing to the written submissions. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001).

After taking the facts alleged in Mr. Flaquer's affidavit as true—except where they are contradicted by hearing transcripts or other documents in the record, *see Puglisi*, 586 F.3d at 214—the Court finds that no material facts are in dispute, that live testimony would add little to the record, and that Mr. Flaquer cannot establish a plausible claim of ineffective assistance of counsel.

### III.

Mr. Flaquer's overarching claim is that he was denied effective assistance of counsel. An individual challenging his conviction on the basis of ineffective assistance of counsel bears the burden of proving that his counsel's representation was deficient. *See United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland v.*

*Washington*, 466 U.S. 668, 689 (1984). The *Strickland* standard is a "rigorous" one. *See Bierenbaum v. Graham*, 607 F.3d 36, 50 (2d Cir. 2010). In *Strickland*, the Supreme Court held that a defendant must establish (1) that his counsel's performance "fell below an objective standard of reasonableness" under "prevailing professional norms" and (2) that counsel's unprofessional errors actually prejudiced the defense; that is, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 669, 688, 694; *see also Rosario v. Erole*, 601 F.3d 118, 129 (2d Cir. 2010) (finding that a petitioner "must demonstrate that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" (quotation marks omitted)).

"The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" *United States v. Aguirre*, 912 F.2d 555, 561 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 696-97) (citations omitted).

A.

Mr. Flaquer first claims that Mr. Walkely's assistance was ineffective because he did not conduct an adequate pre-trial investigation. As the Supreme Court has noted,

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

5

*Strickland*, 466 U.S. at 690-91; *see also Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (discussing the latitude granted to attorneys in judicial review of their strategic decisions). Furthermore, "[t]o the extent that defendant argues that defense counsel could have 'conducted more vigorous pre-trial discovery,' such claims do not 'establish the ineffectiveness of trial counsel.'" *United States v. Montilla*, 85 Fed. App'x 227, 231 (2d Cir. 2003) (summary order) (quoting *United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987)).

Mr. Flaquer maintains that Mr. Walkely did not obtain the FBI's 302 report on the government's only witness until December 21, 2007, well after Mr. Flaquer followed his advice in entering a guilty plea. Mr. Flaquer argues that without this information, Mr. Walkely could not effectively advise him on whether he should enter a plea. However, Mr. Flaquer's claim is belied by the record. Mr. Walkely apparently received a fax of the witness's final 302 report on May 19, 2006, approximately one month before Mr. Flaquer entered his guilty plea. *See* Government's Resp. [doc. # 12-3] Ex. C. There is no credible evidence that Mr. Walkely did not review the FBI's 302 report. *See Puglisi*, 586 F.3d at 214.

Second, Mr. Walkely did not request Mr. Flaquer's passport entries, which Mr. Flaquer states would have demonstrated that, during the alleged conspiracy, Mr. Flaquer flew back and forth between the United States, the Dominican Republic, and Puerto Rico. However, even taking every statement in Mr. Flaquer's affidavit regarding his travels as true, it is unclear how this would have been exculpatory.[1] Indeed, at the sentencing hearing, the government's witness testified that Mr. Flaquer often traveled between these countries and had stated that he acquired the cocaine he sold in Puerto Rico or Santo Domingo. *See United States v. Flaquer*, No. 3:05-cr-

---

[1] Importantly, the affidavit admits that Mr. Flaquer was in the United States at various points during the years of the conspiracy for which he was convicted.

00059-MRK-1 (Aug. 26, 2008) [doc. # 275] at 72-73 (Sentencing Hearing Transcript) [hereinafter Sentencing Tr.]. If Mr. Walkely was aware of Mr. Flaquer's travels—and it is not clear that he was—deciding against investigating the precise dates of travel was entirely reasonable. *See Greiner v. Wells*, 417 F.3d 305, 321 (2d Cir. 2005) (finding that the duty to investigate does not "compel defense counsel to investigate comprehensively every lead or possible defense, or to scour the globe on the off-chance something will turn up" (quotation marks and citation omitted)).

Finally, even assuming that Mr. Walkely's investigation was unreasonably incomplete, Mr. Flaquer has not demonstrated that he was prejudiced by the lack of further investigation on this issue. *See Strickland*, 466 U.S. at 694; *see also United States v. Fisher*, No. 09-3356-cr, 2011 WL 5555806 (2d Cir. Nov. 16, 2011) (denying Fisher's ineffective assistance of counsel claim on the basis that he could not demonstrate prejudice). At the plea hearing, Magistrate Judge Fitzsimmons found that Mr. Flaquer was competent and understood what he was pleading to, and at the pre-sentencing hearing before Judge Nevas on July 20, 2008—well after Mr. Flaquer alleges his lawyer received the FBI's 302 report—Mr. Flaquer declined an offer to withdraw his plea. Mr. Flaquer's affidavit does not dispute that he sold at least five kilograms of cocaine to the government's witness—therefore, even if Mr. Walkely was aware that Mr. Flaquer believed that his passport entries might constitute evidence that he had not sold *more* than five kilograms of cocaine, such knowledge would have no bearing on Mr. Walkely's recommendation to plead guilty to the charge of having been involved in a conspiracy regarding five or more kilograms of cocaine.

There is no need for a hearing on this matter, as there is no evidence that Mr. Walkely's performance was unreasonable or unprofessional, and Mr. Flaquer may not make a credible

assertion that he would have not pled guilty but for Mr. Walkely's failure to review the FBI's 302 report or request Mr. Flaquer's passport entries. *See Strickland*, 466 U.S. 668.

B.

Mr. Flaquer's next claim involves two different arguments. First, Mr. Flaquer maintains that Ms. Polan offered ineffective assistance of counsel because she abandoned an argument that Mr. Flaquer should be held responsible for no more than five kilograms of cocaine. Second, Mr. Flaquer states that Ms. Polan abandoned this argument against his express wishes. As the decision to abandon the argument was a reasonable strategic choice and as Mr. Flaquer's claims about his expressed wishes are contradicted by the evidence in the record, both arguments are implausible.

1.

The Court will briefly review the relevant facts. Although Mr. Flaquer pled guilty to conspiring to possess with intent to distribute and to distribute five kilograms or more of cocaine, the Pre-Sentence Report calculated Mr. Flaquer's base offense level on the assumption that he was responsible for 15-50 kilograms of cocaine. In Mr. Flaquer's July 29, 2008 Sentencing Memorandum, Ms. Polan informed Judge Nevas that Mr. Flaquer would contest the drug quantities attributable to him as set forth in the Pre-Sentencing Report.

At the July 30, 2008 sentencing hearing, before any evidence was introduced, the Government stated that 15-50 kilograms was a conservative estimate and proffered that its witness's testimony would support a finding that Mr. Flaquer had sold him over 50 kilograms. Judge Nevas informed Mr. Flaquer that, after an evidentiary hearing on the subject, it might find that the quantity attributable to him to be higher than 50 kilograms and that such a finding might

result in a higher sentence.[2] Ms. Polan requested time to consult with her client; after doing so, Ms. Polan stated, "I believe Mr. Flaquer's position now is that he doesn't want to contest the quantity. He wants to accept the quantity, the 15 to 50 kilograms . . . and just limit the *Fatico* hearing, as it were, to the role enhancement and the weapon enhancement." Sentencing Tr. at 20:25-21:5. Ms. Polan then withdrew the objection to the quantity assumption.

The government's witness described Mr. Flaquer's role in the conspiracy, testifying that, through intermediaries, Mr. Flaquer had supplied him with five kilograms of cocaine per month for approximately one year, *see id.* at 46-49, two-to-three kilograms of cocaine per month for an unknown period of time, *see id.* at 52-53, then, after a eight-to-nine month break while Mr. Flaquer was in Puerto Rico, one or two kilograms of cocaine a month for approximately a year, *see id.* at 55-57, 62-63.

Judge Nevas later asked Mr. Flaquer if he was ready to be sentenced. Focusing on another issue, he stated that he had never touched a handgun in America. *See id.* at 148. Judge Nevas asked him if he wished to add anything else; after he began speaking in Spanish, Ms. Polan interrupted to note that she did not want him making a legal argument that she would make later. *See id.* at 148-49. Judge Nevas then asked her if she was satisfied that all of the issues that could have been were raised, and that her client understood the nature of the proceedings and the content of the presentence report, which Ms. Polan answered in the affirmative. *Id.* at 149. Ms. Polan then proceeded to argue that the government's analysis of Mr. Flaquer's role was inaccurate, *see id.* at 151, which presumably was what Mr. Flaquer had been discussing when Ms. Polan interrupted him.

---

[2] Mr. Flaquer's allegations that the court "threatened" him with a higher sentence appear to be a misunderstanding of the court's appropriate clarification, which apparently stemmed from the concern that Mr. Flaquer might not understand that he was risking a higher sentence by requesting an evidentiary hearing on this issue. *See* Sentencing Tr. at 18-20.

2.

The question of whether Ms. Polan unreasonably abandoned the argument contesting the drug quantity is quickly answered in the negative. Confronted with a proffer that would likely result in her client receiving a higher sentence, Ms. Polan could have reasonably concluded that contesting the quantity of cocaine would not be in Mr. Flaquer's favor. The decision to avoid that risk was a reasonable strategic decision. *See Greiner v. Wells*, 417 F.3d at 319 ("We will not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside." (quotation marks omitted)).

Nor can Mr. Flaquer demonstrate that, but for Ms. Polan's actions, there was a reasonable probability that the results of the proceedings would have been better for him. Mr. Flaquer offers no evidence that he sold less than 15 kilograms. The sentencing result had Ms. Polan contested the amount might certainly have been *different*. Judge Nevas noted that his sentence was based on the 15 to 50 kilograms assumption "but certainly, based on the testimony I heard today from [the government's witness], if you just did the simple arithmetic, it's probably a lot more than that, but I'm bound by the 15 to 50 kilograms, and that's what the sentence will be based on." Sentencing Tr. at 171:23-172:3.

Because Mr. Flaquer cannot demonstrate that Ms. Polan's decision not to contest the quantity of cocaine for which he was responsible was unreasonable, unprofessional, or prejudicial, the claim does not meet the *Strickland* requirements and there is no need for a hearing. *See Strickland*, 466 U.S. 668.

3.

Whether Ms. Polan ignored Mr. Flaquer's expressed wishes is another story. "It is the role of the lawyer to be a professional advisor and advocate, not to usurp his client's decisions

concerning the objectives of representation." *United States v. Wellington*, 417 F.3d 284, 289 (2d Cir. 2005) (quotation marks, alterations, and citations omitted); *see also* ABA Model Rules of Prof'l Conduct R. 1.2(a). "[T]he accused's will prevails because the constitutional right is to legal *assistance*; 'assistance' differs from an entitlement (let alone an obligation) to override a client's instructions. . . .[T]he ultimate decision rests with the client . . . ." *Wallace v. Davis*, 362 F.3d 914, 920 (7th Cir. 2004) (emphasis in original).

Had Ms. Polan acted against Mr. Flaquer's wishes, this Court might well have found that she violated his rights. However, nothing in the record supports Mr. Flaquer's claim. As evidenced by the sentencing transcript, Ms. Polan came to the sentencing hearing prepared to contest the assumption that Mr. Flaquer was responsible for 15-50 kilograms of cocaine. After a brief discussion with Mr. Flaquer, she announced that he did not wish to contest the amount. Mr. Flaquer did not dispute this decision when the sentencing court gave him the opportunity to do so. Mr. Flaquer has offered no credible evidence that would allow a fact-finder to conclude that Ms. Polan acted against Mr. Flaquer's wishes, *see Puglisi*, 586 F.3d at 214, and so no hearing on this issue is required, *see Newfield*, 565 F.2d at 207.

C.

Mr. Flaquer's final argument is that Ms. Polan's failure to call Mr. Noboa to the stand when contesting the role enhancement constitutes ineffective assistance of counsel.

"It is well settled that '[t]he decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess.'" *Montilla*, 85 Fed. App'x at 231 (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998)) (alteration in original). However, as Ms. Polan has not filed an affidavit, there is no information before the Court as to why counsel declined to call Mr. Noboa. As a result, the Court cannot determine whether this

11

failure to call trial counsel was strategic or constituted ineffective assistance of counsel. *Cf. Pena-Martinez v. Duncan*, 112 Fed. App'x 113, 114-15 (2d Cir. 2004) (summary order) (finding, after requesting affidavits from trial counsel, that trial counsel's decision not to call a witness to testify was strategic); *see also Pavel v. Hollins*, 261 F.3d 210, 223 (2d Cir. 2001) (citing *Hart v. Gomez*, 174 F.3d 1067, 1071 (9th Cir. 1999), for the proposition that counsel provides constitutionally ineffective assistance where he or she does not introduce readily-available evidence that would have corroborated a line of defense when there is no strategic reason for not doing so).

There is no need for the Court to determine whether Ms. Polan's decision was not a strategic decision, as even assuming that Ms. Polan's failure to call Mr. Noboa as a witness was unreasonable, Mr. Flaquer cannot demonstrate that he was prejudiced by this decision. *See Strickland*, 466 U.S. at 694; *Fisher*, 2011 WL 5555806.

Mr. Flaquer does identify testimony, from Mr. Noboa's June 27, 2006 plea hearing, that the two did not know each other well, *see* Pet'r's Reply [doc. # 16] Ex. 16 at 24, and one of Ms. Polan's off-hand statements implies that she would have liked to question Mr. Noboa had the government called him, *see* Sentencing Tr. at 129:16-18 ("MS. POLAN: 'You know, we could have Mr. Noboa [testify] instead, if the government --' MS. REYNOLDS: 'Well, no.'").

However, the Government's witness testified to Mr. Noboa's extensive involvement in Mr. Flaquer's operations. *See id.* at 34, 60-61, 64. Not only is it unclear if Mr. Noboa would have testified as Mr. Flaquer wished, it is not obvious that the sentencing court would have found such testimony more persuasive than that of the Government's witness. Furthermore, even if it could be demonstrated conclusively that Mr. Flaquer was not Mr. Noboa's supervisor, there is still extensive testimony in the record to support the sentencing court's conclusion that Mr. Flaquer

supervised others. The sentencing court did not find the argument that others involved in the conspiracy were merely Mr. Flaquer's "business partners," rather than subordinates, convincing. After Ms. Polan advanced that claim, the court stated: "[Mr. Flaquer] was always there, and in the Court's view, he was the supervisor. He was running this operation." *Id.* at 152:4-6. Nothing in the record indicates that the sentencing court based its role determination solely on Mr. Noboa's relationship to Mr. Flaquer. As Mr. Flaquer cannot demonstrate prejudice, this claim fails. *See Strickland*, 466 U.S. at 694.

Furthermore, to the extent that Mr. Flaquer seeks to recast his earlier appellate claim that the sentencing court erred in applying a two-level enhancement for role in terms of ineffectiveness of counsel, this claim against Ms. Polan is procedurally barred. The Second Circuit recently held that ineffective assistance of counsel claims in a § 2255 proceeding are barred "when the factual predicates of those claims, while not explicitly raised on direct appeal, were nonetheless impliedly rejected by the appellate court mandate." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). In evaluating Mr. Flaquer's appellate claims, the Second Circuit found that the Government had not breached the plea agreement in arguing for enhancement based on Mr. Flaquer's role, Ms. Polan's counsel was not ineffective for failing to claim that the Government breached the agreement, and that the sentencing court did not abuse its discretion when it applied a two-point enhancement for Mr. Flaquer's role and sentencing him within the relevant Guidelines range. *See Flaquer*, 361 Fed. App'x 222. Although the Second Circuit did not explicitly consider whether Mr. Noboa's testimony would have altered the sentencing court's opinion, to the extent Mr. Flaquer attempts to attack the Second Circuit's ruling through a § 2255 petition, it is procedurally barred. *See Yick Man Mui*, 614 F.3d at 53.

**IV.**

Because the Court finds none of Mr. Flaquer's claims to be plausible, *see Puglisi*, 586 F.3d at 213, Mr. Flaquer's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [doc. # 1] is DENIED. **The Clerk is directed to enter judgment for Respondent and to close the case.**

The only remaining issue is whether the Court should issue a Certificate of Appealability ("COA"). For a COA to issue, Mr. Flaquer must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

In this case, the Court is confident that no reasonable juror could find that either Mr. Walkely or Ms. Polan provided ineffective assistance of counsel for failure to conduct an adequate pretrial investigation or for failure to contest the drug quantity at sentencing against Mr. Flaquer's wishes. The Court therefore does not grant a COA with regard to Mr. Flaquer's first two claims.

However, as the Court has no affidavit from Ms. Polan explaining why she made the strategic decision not to call Mr. Noboa as a witness, and as there is a slim chance that a reasonable juror might find that Mr. Noboa's testimony may have altered the sentencing court's

opinion to the extent that the failure to call him was prejudicial, the Court grants Mr. Flaquer a COA with regard to his third claim.

**IT IS SO ORDERED.**

/s/     Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **December 1, 2011.**